1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
7                              AT SEATTLE

8    AUSTIN RICHARD MOORES NELSON,

9                         Petitioner,          Case No. C22-5363-BJR-MLP

10          v.                                 REPORT AND RECOMMENDATION

11   DANIEL WHITE,

12                        Respondent.

13

14          Petitioner Austin Richard Moores Nelson is a state prisoner who is currently confined at

15   the Monroe Correctional Complex in Monroe, Washington. He has filed an amended petition for

16   writ of habeas corpus under 28 U.S.C. § 2254 seeking relief from his 2016 Pierce County

17   Superior Court judgment and sentence. (Am. Pet. (dkt. # 7).) Respondent filed an answer to the

18   petition and submitted relevant portions of the state court record. (Answer (dkt. # 12); State Ct.

19   Rec. I and II (dkt. ## 13-14).) Petitioner filed a response to Respondent's answer.[1] (Resp. (dkt.

20   # 28).)

21

22

23   _____

[1] Petitioner filed a late response along with a motion for extension of time. (Dkt. ## 27-28.) Based on
good cause shown, and that Respondent has no objection (dkt. # 29), the Court GRANTS Petitioner's
motion for extension of time (dkt. # 27) and accepts the late-filed response.

REPORT AND RECOMMENDATION - 1

1    This Court, having reviewed the petition, all briefing of the parties, and the balance of the

2  record, concludes that Petitioner's amended petition for writ of habeas corpus should be denied

3  and this action should be dismissed with prejudice.

4                                    **I.    BACKGROUND**

5    The Washington Court of Appeals, in Petitioner's personal restraint proceedings,

6  summarized the facts underlying Petitioner's convictions as follows:

7        In September 2015, 19-year-old Austin Nelson was dating the 15-year-old
       daughter of Teresa Ryan. After Mrs. Ryan learned of the relationship, she spoke to
8      Mr. Nelson and told him to stay away from her daughter. On January 15, 2016,
       after Mrs. Ryan's daughter ended their relationship, Mr. Nelson damaged her car.
9      On January 17, 2016, Mr. Nelson posted a video on social media of himself and
       Mrs. Ryan's daughter having sex. On January 18, Mr. Nelson went to the home of
10     Teresa and Brent Ryan and "with premeditated intent" shot and killed Teresa Ryan
       outside her home. After shooting Mrs. Ryan, Mr. Nelson entered the Ryan family
11     home and intentionally shot and killed the family dog.

12       At the time she was killed, Mrs. Ryan was employed in the clerk's office at
       Pierce County District Court.
13
         Mr. Nelson was appointed an attorney and the services of an investigator.
14     In September 2016, Mr. Nelson pleaded guilty as charged without the benefit of an
       agreed recommendation. At the time of sentencing, the parties agreed that the
15     standard range sentence for the first degree murder conviction was 281 to 374
       months, with the remaining sentences running concurrently. The parties also agreed
16     that a firearm enhancement would apply to the convictions for murder, burglary,
       and animal cruelty and that these enhancements would run consecutive to the
17     underlying sentences and each enhancement. According to his statement on plea of
       guilty, Mr. Nelson understood that the prosecuting attorney would recommend the
18     maximum allowable in-custody standard range sentence of 512 total months.

19       At sentencing, the court reviewed Mr. Nelson's statement of defendant on
       plea of guilty. After accepting Mr. Nelson's plea, the court considered statements
20     from the prosecutor, victims, and Mr. Nelson. The court noted that it had read 24
       victim impact statements and heard oral statements from the victim's sister and co-
21     worker at district court. The State recommended the maximum standard range as
       indicated in the statement on plea of guilty and asked the court to consider the
22     victim impact statements stating "the defendant committed a premeditated murder,
       killing a woman whose only crime was to protect her daughter." Report of
23     Proceedings (RP) at 18-19.

1    Mr. Nelson and his attorney argued for an exceptional sentence of 419
2    months, based on mental health issues and *Miller*'s[2] application to Mr. Nelson's
     youth. To ensure proportionality to other similarly situated defendants' sentences
3    and to conform to the "Real Facts Doctrine," defense counsel asked the court to
     disregard the victim impact statements and the fact that the victim had worked in
4    the Tacoma District Court Building. *Id.* at 21. Defense counsel stressed that Mr.
     Nelson insisted on taking responsibility for his actions and was "eager to plead out
5    to the original Information." *Id.* at 22. Even after the State added an extra charge,
     "He stepped up and pled as charged to everything." *Id.* Mr. Nelson personally
6    repeated his goal to take full responsibility. *Id.* at 24-25.

7    The trial court accepted Mr. Nelson's plea, stating:

8        I don't know what the evidence is in this case. . . .

9        I didn't know Ms. Ryan. I understand she worked in the District
         Court, worked in the same building. To my knowledge, I never met her. I
10       didn't know her. The letters I read, she had a lot of people that cared an
         awful lot about her. You, in many ways, are a parent's worst nightmare and
11       became her family and friends' worst nightmare. The involvement with the
         daughter, being told not to have a relationship and then basically wait for
12       her and kill her, go into the house and end up killing the dog as well.

13       I appreciate the materials [defense counsel] gave to me. I did read
         them.

14   Resp't Br. App. "E" at 25-26. The court's comments do not focus on the co-worker
15   statements, and the record contains no indication that the judge knew any of the
     victim's co-workers. The court concluded that the high-end was appropriate,
16   adopted the stipulated offender score information, and sentenced Mr. Nelson
     according to the State's recommendation of 512 months, calculated by adding 374
17   months from count 1 to the sentencing enhancements from counts 1, 2 and 3. *Id.* at
     26-28; Resp't Br. App. "A" at 1-5.

18   (State Ct. Rec. I (dkt. # 13), Ex. 2 at 2-4.) Petitioner was convicted of murder in the first degree,

19   burglary in the first degree, animal cruelty in the first degree, and malicious mischief in the

20   second degree. (*Id.*, Ex. 1.) Firearm enhancements were imposed on the first three counts. (*Id.*)

21   Although the underlying sentences were concurrent, the three enhancements ran consecutively to

22

23

---

[2] *Miller v. Alabama*, 567 U.S. 460, 480, 132 S. Ct. 2455, 183 L.Ed.2d 407 (2012).

REPORT AND RECOMMENDATION - 3

them and to each other. (*Id.*, Ex. 2 at 4.) Petitioner "filed an untimely direct appeal" to the Washington Court of Appeals, which was dismissed. (*Id.*, Ex. 2 at 4-5.)

On July 19, 2017, proceeding *pro se*, Petitioner filed a personal restraint petition in the Washington Court of Appeals. (State Ct. Rec. I, Ex. 3.) Petitioner identified six claims in his petition: (1) a firearm enhancement cannot apply to the animal cruelty count; (2) his guilty plea was involuntary because he was misinformed that his sentence would be increased based on the unlawful firearm enhancement; (3) he was deprived of the right to an unbiased judge because the victim had worked in the same building as the judge and the judge may have known some of her coworkers who provided victim impact statements; (4) the judge erred by imposing an exceptional sentence without entering written findings of fact and conclusions of law; (5) the judge erred by failing to find that any of the counts constituted the same criminal conduct; and (6) Petitioner was deprived of effective assistance of counsel during plea bargaining because his counsel failed to recognize any of these issues and pressured him to accept a plea bargain with zero benefit. (*Id.*) Petitioner argued he "should be allowed to demand the specific performance [or] the withdrawal of his plea. (*Id.*, Ex. 3 at 14.) Petitioner was later appointed counsel, who filed a supplemental brief. (*Id.*, Ex. 2 at 5; *see* State Ct. Rec. II (dkt. # 14), Ex. 12.) Petitioner's supplemental brief, filed January 10, 2020, additionally identified a claim that counsel was ineffective by misadvising Petitioner of the range of punishment he faced as initially charged. (State Ct. Rec. II, Ex. 12 at 22-24.) Petitioner argued he "should have the opportunity to accept or refuse a plea offer without the illegal firearm enhancement." (*Id.* at 26.)

On August 19, 2021, the Court of Appeals granted Petitioner's petition in part, holding that the firearm enhancement was erroneous as applied to the animal cruelty charge, and remanded for resentencing but declined to allow Petitioner to withdraw his plea. (State Ct. Rec.

I, Ex. 2 at 6-12, 20.) The court denied the claims of error and bias by the trial judge, and affirmed the convictions. (*Id.* at 12-17, 20.) The court declined to reach the merits of Petitioner's claim that his "trial attorney was ineffective in misadvising him of the standard sentencing range on his original charges," concluding that the claim was untimely because it "was not raised in Mr. Nelson's original petition. Instead, it was first raised by Mr. Nelson's attorney in the supplemental brief filed more than three years after Mr. Nelson was sentenced." (*Id.* at 18.) Petitioner filed a motion for reconsideration, which was denied. (State Ct. Rec. II, Exs. 15-16.)

Petitioner moved for discretionary review of the Court of Appeals' decision in the Washington Supreme Court, and the Supreme Court denied Petitioner's motion on January 26, 2022. (State Ct. Rec. II, Exs. 17, 20.) The court rejected Petitioner's argument that he must be returned to the pre-plea stage because he "failed to show he would rationally have insisted on going to trial had he been correctly informed of the inapplicability of the firearm enhancement." (*Id.*, Ex. 20 at 2-3.) The court also held that the misadvice claim was untimely, rejecting Petitioner's argument that his general claim of ineffective assistance during plea bargaining preserved "specific manifestations of that claim[.]" (*Id.*, Ex. 20 at 3-4 ("Mr. Nelson first made this argument in a supplemental brief filed after the one-year time limit on collateral relief had expired.").) Petitioner filed a motion to modify the ruling, which was denied. (*Id.*, Exs. 21-22.)

The Court of Appeals issued a certificate of finality in Petitioner's personal restraint proceeding on May 4, 2022. (State Ct. Rec. II, Ex. 23.) Petitioner now seeks federal habeas review of his state court convictions.

## II.    GROUNDS FOR RELIEF

As grounds for relief in his amended federal habeas petition, Petitioner contends he was denied his right to effective assistance of counsel during plea negotiations because:

1.      Counsel misadvised Petitioner as to the sentencing range if he pleaded guilty as originally charged.

2.      Counsel failed to recognize that the firearm enhancement on the animal cruelty charge was unlawful.

3.      Counsel pressured Petitioner to accept a plea bargain.

(Am. Pet. at 36-38.) As a remedy, Petitioner contends he is entitled to be returned to the plea negotiations stage. (*Id.* at 37-38.)

## III.    DISCUSSION

Respondent contends Petitioner failed to properly exhaust his first claim and that the claim is now procedurally barred under state law. (Answer at 8-16.) Respondent concedes that Petitioner properly exhausted his second and third claims by fairly presenting the claims to the Washington Court of Appeals in his personal restraint petition (State Ct. Rec. I, Ex. 3), and to the Washington Supreme Court in his motion for discretionary review from the denial of his personal restraint petition (State Ct. Rec. II, Ex. 17). Respondent argues, however, that the claims were reasonably adjudicated by the Washington Court of Appeals and, thus, Petitioner is not entitled to relief on these claims. (Answer at 19-26.) Accordingly, Respondent contends Petitioner's federal habeas petition should be dismissed.

### A.      Exhaustion and Procedural Default

Petitioner asserts in his first ground for relief that his "trial counsel misadvised Mr. Nelson regarding the range of punishment he faced if he pleaded guilty as originally charged. This made the latter plea offer that Mr. Nelson accepted seem like an improvement, when in fact it was not." (Am. Pet. at 37.) Respondent argues Petitioner did not fairly present this claim to the Washington Supreme Court and thus it is now procedurally barred. (Answer at 7.) In his

1   Response, Petitioner argues he "has indeed exhausted this claim in the state court" but only

2   references his claim regarding the firearm enhancement. (Resp. at 2.)

3           *1.    Legal Standards*

4           A state prisoner is required to exhaust all available state court remedies before seeking a

5   federal writ of habeas corpus. 28 U.S.C. § 2254(b)(1). The exhaustion requirement is a matter of

6   comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged

7   violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal

8   quotation marks and citations omitted). In order to provide the state courts with the requisite

9   "opportunity" to consider his federal claims, a prisoner must "fairly present" his claims to each

10  appropriate state court for review, including a state supreme court with powers of discretionary

11  review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365

12  (1995), and *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

13          "In order to 'fairly present' an issue to a state court, a petitioner must 'present the

14  substance of his claim to the state courts, including a reference to a federal constitutional

15  guarantee and a statement of facts that entitle the petitioner to relief.'" *Gulbrandson v. Ryan*, 738

16  F.3d 976, 992 (9th Cir. 2013) (quoting *Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009)). A

17  habeas petitioner who fails to meet a state's procedural requirements for presenting his federal

18  claims deprives the state courts of the opportunity to address those claims in the first instance.

19  *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

20          When a prisoner defaults on his federal claims in state court pursuant to an independent

21  and adequate state procedural rule, federal habeas review of the claims is barred unless the

22  prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged

23  violation of federal law, or demonstrate that failure to consider the claims will result in a

1    fundamental miscarriage of justice. *Id*. at 750. If the last state court to decide a federal claim

2    clearly and expressly states that its judgment rests on a state procedural bar, there is a procedural

3    default for purposes of federal habeas review. *Harris v. Reed*, 489 U.S. 255, 263 (1989).

4        Fair presentation requires that a petitioner present to the state courts the same claim,

5    including both the operative facts and the federal legal theory, upon which his claim is

6    based. *See, e.g.*, *Picard*, 404 U.S. at 275-76; *see also Castillo v. McFadden*, 399 F.3d 993, 999

7    (9th Cir. 2005). "[P]etitioners must plead their claims with considerable specificity before the

8    state courts in order to satisfy the exhaustion requirement." *Rose v. Palmateer*, 395 F.3d 1108,

9    1111 (9th Cir. 2005).

10        *2.    Analysis*

11        The Court of Appeals declined to address Petitioner's claim that counsel misadvised him,

12    stating that "[b]ecause it was filed after the one-year time limit, the claim is untimely and will

13    not be considered." (State Ct. Rec. I, Ex. 2 at 18 (citing Wash. Rule of Appellate Procedure

14    ("RAP") 16.8(e)).) The appellate rule provides that petition amendments "raising new grounds"

15    are subject to the one-year time limit in RCW 10.73.090. RAP 16.8(e); *see* RCW 10.73.090 ("No

16    petition or motion for collateral attack on a judgment and sentence in a criminal case may be

17    filed more than one year after the judgment becomes final if the judgment and sentence is valid

18    on its face and was rendered by a court of competent jurisdiction.").

19        The Supreme Court affirmed on the grounds that "Mr. Nelson first made this argument in

20    a supplemental brief filed after the one-year time limit on collateral relief had expired." (State Ct.

21    Rec. II, Ex. 20 at 3.) The court rejected Petitioner's argument that, "because he generally argued

22    in his original petition that counsel was ineffective in the plea bargaining process, he timely

23    asserted this claim." (*Id.* at 4.)

The Ninth Circuit has recognized that the state time bar statute invoked by the state courts to bar the claim that Petitioner's counsel misadvised him, *i.e.*, RCW 10.73.090, provides an independent and adequate state procedural ground to bar federal habeas review. *See Casey v. Moore*, 386 F.3d 896, 920 (9th Cir. 2004); *Shumway v. Payne*, 223 F.3d 982, 989 (9th Cir. 2000). Because the state courts concluded that the claim was procedurally barred pursuant to an independent and adequate state procedural rule, there is a procedural default for purposes of federal habeas review.

Petitioner contends in his recently filed response to Respondent's answer that:

> This claim was presented in a timely manner. The Court of Appeals stated, "[s]ince we have already granted Mr. Nelson's request for resentencing, we decline to consider whether counsel's failure to spot the issue amounts to ineffective assistance of counsel."

(Resp. at 2.) However, this argument addresses claims related to the firearm enhancement, not the issue of misadvice as to sentencing range. Previously, in his motions for reconsideration before the Court of Appeals and for discretionary review before the Supreme Court, Petitioner argued his claim was timely raised because "misadvice about the firearm enhancement [and] about the range of punishment [were] both 'part and parcel' of the claim of ineffective assistance during plea bargaining." (State Ct. Rec. II, Ex. 15 at 7; *see also id.*, Ex. 17 at 28-32.)

Although Petitioner's original personal restraint petition raised claims of ineffective assistance of counsel at the plea negotiation stage based on counsel's failure to recognize the unlawful firearm enhancement and pressuring Petitioner, Petitioner did not timely raise the specific issue of misadvising him of the standard sentencing range on the original charges. (*See* State Ct. Rec. I, Ex. 3 at 11-13, 19.) Similar circumstances were found in *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2003), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143, 1148-49 (9th Cir. 2007). In that case the Ninth Circuit held that, although the petitioner

1  exhausted a claim of ineffective assistance of counsel based on counsel's failure to object to the

2  prosecutor testifying, he failed to exhaust a claim based on counsel's failure to file a motion to

3  recuse the prosecutor. *Kelly*, 315 F.3d at 1068. Here, the Court cannot find exhaustion of the

4  misadvice claim merely because Petitioner raised other claims of ineffective assistance of

5  counsel based on other actions of counsel during the plea negotiation stage.

6      Because the state courts concluded that the misadvice claim first asserted in the

7  supplemental brief submitted by Petitioner's attorney to the Court of Appeals was procedurally

8  barred pursuant to an independent and adequate state procedural rule, there is a procedural

9  default for purposes of federal habeas review.

10     When a state prisoner defaults on his federal claims in state court, pursuant to an

11 independent and adequate state procedural rule, federal habeas review of the claims is barred

12 unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the

13 alleged violation of federal law, or can demonstrate that failure to consider the claims will result

14 in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. To satisfy the "cause" prong

15 of the cause and prejudice standard, a petitioner must show that some objective factor external to

16 the defense prevented him from complying with the state's procedural rule. *Id*. at 753 (citing

17 *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show "prejudice," a petitioner "must shoulder

18 the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but

19 that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of

20 constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in

21 original). Only in an "extraordinary case" may the habeas court grant the writ without a showing

22 of cause or prejudice to correct a "fundamental miscarriage of justice" where a constitutional

23

1    violation has resulted in the conviction of a defendant who is actually innocent. *Murray*, 477

2    U.S. at 495-96.

3        Respondent argues in his answer that Petitioner has not made the requisite showing to

4    excuse his procedural default. (Answer at 13-16.) The Court agrees. Petitioner's response does

5    not address the issue of cause or prejudice.[3] The Court observes as well that Petitioner makes no

6    showing that failure to consider his defaulted claim will result in a fundamental miscarriage of

7    justice. Petitioner therefore fails to demonstrate that his unexhausted claim is eligible for federal

8    habeas review. Accordingly, Petitioner is not entitled to relief on this claim.

9        **B.    Properly Exhausted Claims**

10           *1.    Federal Habeas Standard, 28 U.S.C. § 2254*

11        Federal habeas corpus relief is available only to a person "in custody in violation of the

12    Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus

13    petition may be granted with respect to any claim adjudicated on the merits in state court only if

14    the state court's decision was contrary to, or involved an unreasonable application of, clearly

15    established federal law, as determined by the United States Supreme Court, or if the decision was

16    based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C.

17    § 2254(d).

18

19    _____

20    [3] Previously, in his motion for reconsideration before the Court of Appeals, Petitioner argued that
      equitable tolling applied because, when he filed his personal restraint petition, "he did not yet have his
      attorney file [containing] evidence that Mr. Nelson's trial attorney had told him the wrong sentencing
      ranges[.]" (State Ct. Rec. II, Ex. 15 at 8-10.) To the extent that the lack of the file may be construed as a

21    reason to find cause for the default, Petitioner has not shown that the file was necessary because, as he
      stated in his supplemental brief before the Court of Appeals and his motion for discretionary review

22    before the Supreme Court, "Mr. Nelson himself similarly recalls that his attorney told him his 'low range
      sentence would be 47 ½ years[.]'" (*Id.*, Exs. 12 at 23, 17 at 25-26.) Because the facts underlying his claim

23    were within his knowledge, there is no indication that Petitioner was prevented from complying with the
      State's procedural rules by some objective factor external to his defense. Thus, cause for his procedural
      default has not been established.

1        Under the "contrary to" clause, a federal habeas court may grant the writ only if the state

2   court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law,

3   or if the state court decides a case differently than the Supreme Court has on a set of materially

4   indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the

5   "unreasonable application" clause, a federal habeas court may grant the writ only if the state

6   court identifies the correct governing legal principle from the Supreme Court's decisions, but

7   unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09.

8        The Supreme Court has made clear that a state court's decision may be overturned only if

9   the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

10  The Supreme Court has also explained that "[a] state court's determination that a claim lacks

11  merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

12  correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing

13  *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

14       Clearly established federal law means "the governing legal principle or principles set

15  forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S.

16  at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the

17  legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary

18  to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d

19  952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

20       In considering a habeas petition, this Court's review "is limited to the record that was

21  before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S.

22  170, 181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a

23  state court, such determination shall be presumed correct, and the applicant has the burden of

1    rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C.

2    § 2254(e)(1).

3            2.      *Ineffective Assistance of Counsel Standard*

4            The Sixth Amendment guarantees a criminal defendant the right to effective assistance of

5    counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). "The essence of an ineffective-

6    assistance claim is that counsel's unprofessional errors so upset the adversarial balance between

7    defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."

8    *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). Claims of ineffective assistance of counsel

9    are evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must

10   prove (1) that counsel's performance was deficient and, (2) that the deficient performance

11   prejudiced the defense. *Strickland*, 466 U.S. at 687.

12           With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's

13   performance fell below an objective standard of reasonableness. *Id*. at 688. Judicial scrutiny of

14   counsel's performance must be highly deferential. *Id*. at 689. "A fair assessment of attorney

15   performance requires that every effort be made to eliminate the distorting effects of hindsight, to

16   reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

17   counsel's perspective at the time." *Id*.

18           The second prong of the *Strickland* test requires a showing of actual prejudice related to

19   counsel's performance. In order to establish prejudice, a petitioner "must show that there is a

20   reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

21   would have been different. A reasonable probability is a probability sufficient to undermine

22   confidence in the outcome." *Id*. at 694. The reviewing court need not address both components

23   of the inquiry if an insufficient showing is made on one component. *Id*. at 697.

1    While the Supreme Court established in *Strickland* the legal principles that govern claims

2  of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate

3  whether defense counsel's performance fell below the *Strickland* standard. *Harrington*, 562 U.S.

4  at 101. Rather, when considering an ineffective assistance of counsel claim on federal habeas

5  review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard

6  was unreasonable." *Id*. As the Supreme Court explained in *Harrington*, "[a] state court must be

7  granted a deference and latitude that are not in operation when the case involves review under

8  the *Strickland* standard itself." *Id*.

9              *3.    Analysis*

10   Petitioner asserts in his federal habeas petition that he was denied his constitutional right

11  to effective assistance of counsel during plea negotiations when his trial counsel failed to

12  recognize that the firearm enhancement on the animal cruelty charge was unlawful and when

13  counsel pressured Petitioner to accept a plea bargain. (Am. Pet. at 36-37.) Petitioner contends the

14  remedy he is entitled to is a return to the plea negotiation stage. (*Id.* at 37-38.)

15              i.    Firearm Enhancement

16   The Washington Court of Appeals found that the firearm enhancement was unlawful and

17  remanded for resentencing. (State Ct. Rec. I, Ex. 2 at 6-7, 20.) However, the court rejected

18  Petitioner's argument that he was entitled to return to the plea negotiation stage because his trial

19  counsel had been ineffective for failing to recognize the unlawfulness of the enhancement.

20       Mr. Nelson argues that his attorney was ineffective in several respects. First,
     he argues that his attorney was ineffective for failing to object to the application of
21     the firearm enhancement to an unranked felony. We note that even if Mr. Nelson is
     correct, the remedy is to place him back in the position he would have been without
22     the error. *State v. Drath*, 7 Wn. App. 2d 255, 270, 431 P.3d 1098 (2018). Since we
     have already granted Mr. Nelson's request for resentencing, we decline to consider
23     whether counsel's failure to spot this issue amounts to ineffective assistance of
     counsel.

1    (*Id.* at 17-18.)

2         The Supreme Court held that, because the sentencing error was remedied, Petitioner had

3    not shown prejudice due to ineffective assistance of counsel.

4              When the voluntariness of a guilty plea is directly challenged on the basis
5         of misinformation as to sentencing consequences, prejudice on collateral review is
          measured by whether it is more likely than not the petitioner would have refused to
6         plead guilty and would have insisted on going to trial had the petitioner been
          correctly informed, with this question examined under an objective rational person
7         standard that ask[s] whether a rational person, correctly informed, would more
          likely than not have chosen to go to trial rather than accept the plea offer. [*State v.*]
8         *Buckman*, 190 Wn.2d [51,] 65-69 [(Wash. 2018)]. When the challenge is made by
          way of a claim of ineffective assistance of counsel, the standard is similar: whether,
9         but for counsel's error, there is a reasonable probability the petitioner would have
          not pleaded guilty and would have insisted on going to trial, the inquiry again being
10        whether it would have been rational under the circumstances to reject the plea offer.
          *State v. Sandoval*, 171 Wn.2d 163, 174-75, 249 P.3d 1015 (2011). In relation to Mr.
11        Nelson's claim of involuntariness, the Court of Appeals held that Mr. Nelson failed
          to show he would rationally have insisted on going to trial had he been correctly
12        informed of the inapplicability of the firearm enhancement. Although the standard
          in a voluntariness challenge is "more likely than not," while the standard in an
13        ineffective assistance claim is "reasonable probability," Mr. Nelson does not show
          that an assessment of the objective rationality of rejecting the plea offer under the
          latter standard would result in a different conclusion.

14

15             Mr. Nelson primarily argues that when counsel is ineffective in these
          circumstances, the petitioner must be returned to the preplea stage and proceed
16        under a correct understanding of the potential sentence; that is, returned to the
          position the petitioner would have been in had counsel not been ineffective, and
17        from that position re-engage in plea negotiations. Mr. Nelson relies mainly on a
          federal court decision that he did not cite in his briefing in the Court of Appeals,
18        *Johnson v*[.] *Uribe*, 700 F.3d 413 (9th Cir. 2012). The court in that collateral
          challenge did hold that the proper remedy when counsel misinforms an offender of
19        sentencing consequences during the plea process is a return to the preplea stage,
          not resentencing. *Id.* at 427-28. But the court did not apply the standard of prejudice
20        employed by the courts of this state, and that decision is not binding on this state's
          courts in any event. *Feis v. King County Sheriff's Dep't*, 165 Wn. App. 525, 547,
21        267 P.3d 1022 (2011). Nor is a claimed conflict with a lower federal court decision
          a ground for this court's review.

22   (State Ct. Rec. II, Ex. 20 at 2-3.)

23

REPORT AND RECOMMENDATION - 15

1       Petitioner has not shown that the state court's application of the prejudice prong of the

2  *Strickland* standard was unreasonable, nor has he identified any United States Supreme Court

3  case law that mandates the outcome he seeks. In his Amended Petition, Petitioner does not

4  address the issue of prejudice other than to note that the state courts "concluded that he had not

5  shown the requisite prejudice[,]" and he makes no argument beyond restating that he should be

6  "returned to the position he would have been in but for counsel's ineffective assistance[,]" *i.e.*,

7  "the plea negotiation stage[.]" (Am. Pet. at 37.)

8       In his Response, Petitioner again contends that "Mr. Nelson's case is like *Uribe*." (Resp.

9  at 9.) However, as the Washington Supreme Court explained, *Uribe* is a Ninth Circuit case, and

10  that decision is not binding on the state courts. (State Ct. Rec. II, Ex. 20 at 3.) "[A]lthough circuit

11  law may be persuasive in determining whether a state court has unreasonably applied Supreme

12  Court law, 'only the Supreme Court's holdings are binding on the state courts and only those

13  holdings need be reasonably applied[.]'" *Brewer*, 378 F.3d 957 (quoting *Clark v. Murphy*, 331

14  F.3d 1062, 1070 (9th Cir. 2003)). Petitioner identifies no Supreme Court precedent holding that

15  resentencing is an inadequate remedy in circumstances resembling his.

16       Petitioner's restatement of arguments raised in the state courts is insufficient to

17  demonstrate that the state court decision is contrary to, or constitutes an unreasonable application

18  of, United States Supreme Court precedent, or that the decision is based upon an unreasonable

19  determination of the facts. His petition for federal habeas relief on this ground should therefore

20  be denied.

21       ii.   Coercion

22       Petitioner contends his trial counsel provided ineffective assistance by "pressur[ing] Mr.

    Nelson to plead guilty to [the] amended charges, which appeared to have a lesser range of

23  punishment than the original charges." (Am. Pet. at 37-38.) To the extent Petitioner's claim is

1    based on being misadvised as to the sentencing range of the original charges, as explained above,

2    the claim is procedurally barred.

3        To the extent Petitioner's claim is based on undue coercion, the Court of Appeals rejected

4    his claim under the performance prong of *Strickland*.

5            Mr. Nelson fails to demonstrate that he was coerced into pleading guilty
         without a benefit. According to his own affidavit, he received and was able to
6        review his paperwork for more than a week before his plea and sentencing. Each
         page of the statement of defendant on plea of guilty contains the hand-written
7        initials of Mr. Nelson and his attorney. In response to the judge's questions, Mr.
         Nelson affirmed that his attorney had gone over the document with him, and he did
8        not have any questions. He specifically denied that he was pleading guilty in
         response to any threats or coercion. The decision to plead guilty without the benefit
9        of a favorable agreement was strategic. Mr. Nelson told the court that he was
         pleading straight up to accept responsibility in the hopes that the court would accept
10       his argument for an exceptional sentence below the standard range. On this record,
         we do not find Mr. Nelson's trial attorney ineffective.

11

12   (State Ct. Rec. I, Ex. 2 at 19-20.)

13       Petitioner fails to demonstrate that the state court's application of the *Strickland* standard

14   was erroneous or that it was unreasonable for the state court to have concluded that Petitioner did

15   not establish deficient performance under that standard. That Petitioner disagrees with the state

16   court's conclusion on the issue of deficient performance is simply not sufficient to entitle him to

17   relief. His petition for federal habeas relief on this ground should therefore be denied.

18   **C.    Certificate of Appealability**

19       A petitioner seeking post-conviction relief under § 2254 may appeal a district court's

20   dismissal of his federal habeas petition only after obtaining a certificate of appealability from a

21   district or circuit judge. A certificate of appealability may issue only where a petitioner has made

22   "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). A

23   petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the

     district court's resolution of his constitutional claims or that jurists could conclude the issues

REPORT AND RECOMMENDATION - 17

presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that Petitioner is not entitled to a certificate of appealability.

### IV.    CONCLUSION

Based on the foregoing, the Court recommends that Petitioner's amended petition for writ of habeas corpus (dkt. # 7) be denied and this action be dismissed with prejudice. This Court also recommends that a certificate of appealability be denied. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **March 10, 2023**.

Dated this 10th day of February, 2023.

MICHELLE L. PETERSON
United States Magistrate Judge